KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-4902
  Fax:  (213) 897-5775
  E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris,*
*California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION (LOS ANGELES)

| | |
|---|---|
| **ULISES GARCIA; JORDAN GALLINGER; BRIAN HILL; BROOKE HILL; CRAIG DeLUZ; SCOTT DIPMAN; ALBERT DUNCAN; TRACEY GRAHAM; LISA JANG; DENNIS SERBU; MICHAEL VEREDAS; FIREARMS POLICY FOUNDATION; FIREARMS POLICY COALITION; MADISON SOCIETY FOUNDATION; and THE CALGUNS FOUNDATION,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**KAMALA D. HARRIS, in her official capacity as Attorney General of California,**<br><br>Defendant. | Case No.:  2:16-cv-02572-BRO-AFM<br><br>**REQUEST FOR JUDICIAL NOTICE FILED IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY CALIFORNIA ATTORNEY GENERAL KAMALA D. HARRIS**<br><br>Date:            August 8, 2016<br>Time:            1:30 p.m.<br>Courtroom:   14<br>Judge:           The Honorable Beverly Reid O'Connell<br>Acton Filed:   April 14, 2016 |

1

Pursuant to Rule 201 of the Federal Rules of Evidence ("FRE"), California Attorney General Kamala D. Harris hereby respectfully requests that this Court take judicial notice of the following documents:

1.    The committee analysis of Senate Bill 707 of the California Senate Committee on Public Safety (2014-2015 Reg. Sess.), dated April 14, 2015 (the "April 14 Committee Analysis"). A true and correct copy of the April 14 Committee Analysis is annexed hereto as Exhibit A.

2.    The committee analysis of Senate Bill 707 of the California Senate Committee on Public Safety (2014-2015 Reg. Sess.), dated July 14, 2015 (the "July 14 Committee Analysis"). A true and correct copy of the July 14 Committee Analysis is annexed hereto as Exhibit B.

3.    The memorandum and order of the Honorable Morrison C. England, United States District Judge for the Eastern District of California, filed on September 3, 2004, in *Mehl, et al. v. Blanas, et al.*, No. CIV. S 03-2682 MCE KJM (E.D. Cal. Sept. 3, 2004) (Dkt. No. 17) (the "*Mehl* Dismissal Order"). The *Mehl* Dismissal Order was not published and is not available on an electronic database. A true and correct copy of the *Mehl* Dismissal Order is annexed hereto as Exhibit C.

### MEMORANDUM OF POINTS AND AUTHORITIES

This Court "'may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)); *see also Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."),

1   *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501

2   U.S. 104, 107 (1991).

3       The Court may properly take judicial notice of the annexed exhibits.  Exhibits

4   A and B are part of the legislative history of Senate Bill 707 to amend the Gun-Free

5   School Zones Act of 1995.  *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th

6   Cir. 2012) ("Legislative history is properly a subject of judicial notice." (citing

7   *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005))); *Snyder v. Unum Life*

8   *Ins. Co. of Am.*, No. CV 13-07522 BRO (RZx), 2014 WL 7734715, at *5 (C.D. Cal.

9   Oct. 28, 2014) (finding that state statute's "legislative history is a source whose

10  accuracy cannot reasonably be questioned and a proper subject for judicial notice"

11  (citing *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005))).  Exhibit C is

12  an order of the United States District Court for the Eastern District of California.

13  *See Walker v. Metro. Life Ins. Co.*, No. CV 09-1178 PSG (AGRx), 2009 WL

14  2048328, at *2 n.2 (C.D. Cal. July 9, 2009) ("The Court may take judicial notice of

15  orders by other courts . . . ." (citing *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203,

16  207 n.5 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S. 548)).  Accordingly, the

17  annexed exhibits are the proper subjects of judicial notice and may be considered in

18  conjunction with the concurrently filed motion to dismiss.

## CONCLUSION

20      For the reasons set forth above, the Request for Judicial Notice should be

21  granted.

1

2
Dated:  June 10, 2016                    Respectfully submitted,

3
KAMALA D. HARRIS
Attorney General of California

4
MARK R. BECKINGTON
Supervising Deputy Attorney General

5

6
/s/ John D. Echeverria

7
JOHN D. ECHEVERRIA
Deputy Attorney General

8
Attorneys for Defendant Kamala D.
Harris, California Attorney General

9

10
SA2016101989
52125867.doc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## SENATE COMMITTEE ON PUBLIC SAFETY
### Senator Loni Hancock, Chair
### 2015 - 2016  Regular

| | | | |
|---|---|---|---|
| **Bill No:** | SB 707 | **Hearing Date:** | April 14, 2015 |
| **Author:** | Wolk | | |
| **Version:** | February 27, 2015 | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | JRD | | |

### Subject:  *Firearms:  Gun-free School Zone*

### HISTORY

Source:          Author

Prior Legislation:       AB 624 (Allen)  – Chap. 659, Stats. 1995
                         AB 2609 (Lampert)  – Chap. 115, Stats. 1998

Support:       California  Chapters of the Brady Campaign to Prevent Violence;  California
               Public Defenders Association;  Friends Committee  on Legislation of California;
               Law Center to Prevent Gun Violence;  Physicians  for Social Responsibility,
               Sacramento Chapter;  Violence Prevention  Coalition;  Women Against Gun
               Violence

Opposition:    Sacramento County Deputy Sheriffs' Association;  California  Correctional
               Supervisors Organization;  California Narcotics Officers;  California  Rifle and
               Pistol Association,  Inc.;  Fraternal Order of Police, California  State Lodge;  Long
               Beach Police Officers Association;  Los Angeles County Professional Peace
               Officers Association;  Retired & Disabled  Police of America;  Santa Ana Police
               Officers Association;  California  College and University Police Chiefs Association
               (unless amended);  1 individual

### PURPOSE

*The purpose of this legislation is to: (1) allow a person holding a valid license to carry a
concealed firearm, and a retired peace officer authorized to carry a concealed or loaded
firearm, to carry a firearm in an area that is within 1,000 feet of, but not on the grounds of, a
public or private school providing instruction in kindergarten or grades 1 to 12; and, (2) delete
the exemption that allows a person holding a valid license to carry a concealed firearm, and a
retired peace officer authorized to carry a concealed or loaded firearm, to possess a firearm on
the campus of a university or college.*

*Existing law* creates the Gun-Free School Zone Act of 1995.  (Penal Code § 626.9(a).)

*Existing law* defines  a "school zone" to means an area in, or on the grounds of, a public or
private school providing  instruction  in kindergarten  or grades 1 to 12, or within a distance  of
1,000 feet from the grounds of the public or private school.  (Penal Code § 626.9(e).)

*Under existing law* any person who possesses a firearm in a place that the person knows, or reasonably should know, is a school zone, unless it is with the written permission of the school district superintendent, or equivalent school authority, is punished as follows:

- Any person who possesses a firearm in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, is subject to imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years.

- Any person who possesses a firearm within a distance of 1,000 feet from a public or private school providing instruction in kindergarten or grades 1 to 12, is subject to:

  o Imprisonment in a county jail for not more than one year or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years; or,

  o Imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years, if any of the following circumstances apply:

    ▪ If the person previously has been convicted of any felony, or of any crime made punishable by any provision listed in Section 16580.

    ▪ If the person is within a class of persons prohibited from possessing or acquiring a firearm, as specified.

    ▪ If the firearm is any pistol, revolver, or other firearm capable of being concealed upon the person and the offense is punished as a felony, as specified.

- Any person who, with reckless disregard for the safety of another, discharges, or attempts to discharge, a firearm in a school zone shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for three, five, or seven years.

- Every person convicted under this section for a misdemeanor violation who has been convicted previously of a misdemeanor offense, as specified, must be imprisoned in a county jail for not less than three months.

- Every person convicted under this section of a felony violation who has been convicted previously of a misdemeanor offense as specified, if probation is granted or if the execution of sentence is suspended, he or she must be imprisoned in a county jail for not less than three months.

- Every person convicted under this section for a felony violation who has been convicted previously of any felony, as specified, if probation is granted or if the execution or imposition of sentence is suspended, he or she must be imprisoned in a county jail for not less than three months.

- Any person who brings or possesses a loaded firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, without the written permission of the university or college president, his or her designee, or equivalent university or college

authority, must be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years.

- Any person who brings or possesses a firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, without the written permission of the university or college president, his or her designee, or equivalent university or college authority, must be punished by imprisonment pursuant to subdivision (h) of Section 1170 for one, two, or three years.

(Penal Code § 626.9(f)-(i).)

*Existing law*s states that the Gun-Free School Zone Act of 1995 does not apply to possession of a firearm under any of the following circumstances:

- Within a place of residence or place of business or on private property, if the place of residence, place of business, or private property is not part of the school grounds and the possession of the firearm is otherwise lawful.

- When the firearm is an unloaded pistol, revolver, or other firearm capable of being concealed on the person and is in a locked container or within the locked trunk of a motor vehicle.

- The lawful transportation of any other firearm, other than a pistol, revolver, or other firearm capable of being concealed on the person, in accordance with state law.

- When the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified.

- When the person is exempt from the prohibition against carrying a concealed firearm, as specified.

(Penal Code § 626.9(c).)

*Existing law* states that the Gun-Free School Zone Act of 1995 does not apply to:

- A duly appointed peace officer;

- A full-time paid peace officer of another state or the federal government who is carrying out official duties while in California;

- Any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting the officer;

- A member of the military forces of this state or of the United States who is engaged in the performance of his or her duties;

- A person holding a valid license to carry a concealed firearm;

- An armored vehicle guard, engaged in the performance of his or her duties, as specified;

- A security guard authorized to carry a loaded firearm;
- An honorably retired peace officer authorized to carry a concealed or loaded firearm; or,

- An existing shooting range at a public or private school or university or college campus.

(Penal Code § 626.9(l).)

*This bill* would allow a person holding a valid license to carry a concealed firearm, and a retired peace officer authorized to carry a concealed or loaded firearm, to carry a firearm in an area that is within 1,000 feet of, but not on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12.

*This bill* would delete the exemption that allows a person holding a valid license to carry a concealed firearm, and a retired peace officer authorized to carry a concealed or loaded firearm, to possess a firearm on the campus of a university or college.

## RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION

For the past eight years, this Committee has scrutinized legislation referred to its jurisdiction for any potential impact on prison overcrowding. Mindful of the United States Supreme Court ruling and federal court orders relating to the state's ability to provide a constitutional level of health care to its inmate population and the related issue of prison overcrowding, this Committee has applied its "ROCA" policy as a content-neutral, provisional measure necessary to ensure that the Legislature does not erode progress in reducing prison overcrowding.

On February 10, 2014, the federal court ordered California to reduce its in-state adult institution population to 137.5% of design capacity by February 28, 2016, as follows:

- 143% of design bed capacity by June 30, 2014;
- 141.5% of design bed capacity by February 28, 2015; and,
- 137.5% of design bed capacity by February 28, 2016.

In February of this year the administration reported that as "of February 11, 2015, 112,993 inmates were housed in the State's 34 adult institutions, which amounts to 136.6% of design bed capacity, and 8,828 inmates were housed in out-of-state facilities. This current population is now below the court-ordered reduction to 137.5% of design bed capacity."( Defendants' February 2015 Status Report In Response To February 10, 2014 Order, 2:90-cv-00520 KJM DAD PC, 3-Judge Court, *Coleman v. Brown, Plata v. Brown* (fn. omitted).

While significant gains have been made in reducing the prison population, the state now must stabilize these advances and demonstrate to the federal court that California has in place the "durable solution" to prison overcrowding "consistently demanded" by the court. (Opinion Re: Order Granting in Part and Denying in Part Defendants' Request For Extension of December 31, 2013 Deadline, NO. 2:90-cv-0520 LKK DAD (PC), 3-Judge Court, *Coleman v. Brown, Plata v. Brown* (2-10-14). The Committee's consideration of bills that may impact the prison population therefore will be informed by the following questions:

- Whether a proposal erodes a measure which has contributed to reducing the prison population;
- Whether a proposal addresses a major area of public safety or criminal activity for which there is no other reasonable, appropriate remedy;
- Whether a proposal addresses a crime which is directly dangerous to the physical safety of others for which there is no other reasonably appropriate sanction;
- Whether a proposal corrects a constitutional problem or legislative drafting error; and
- Whether a proposal proposes penalties which are proportionate, and cannot be achieved through any other reasonably appropriate remedy.

## COMMENTS

### 1. Need for This Legislation

According to the Author:

> In recent years there has been a disturbing increase in the number of active shooter incidents on school, college, and university campuses across the country, with 42 such incidents in 2014. There have also been an alarming number of sexual assaults on college and university campuses. Recently, some gun rights proponents in other states have sponsored legislation to increase the opportunity for students and teachers to bring firearms on school campuses with CCWs, claiming this will deter sexual assaults and defend against active shooters. These efforts have been vigorously opposed by school public safety officials, school administrators, and public safety advocates. Research also indicates that bringing more firearms on campus will lead to more campus violence and increase the danger to students and others on campus.

> California law provides that the authority over school safety belongs with school/campus authorities. SB 707 maintains that authority and allows school officials to prohibit or allow a firearm on campus as they deem appropriate. Closing the CCW exemption in California law is consistent with efforts to maintain school and college campuses as safe, gun free, environments for students. SB 707 will ensure that students and parents who expect a campus to be safe and "gun free" can be confident that their expectation is being met and that school officials remain in charge of who, if anyone, is allowed to bring a firearm on their campus.

### 2. Effect of the Legislation

Honorably retired peace officers authorized to carry a concealed or loaded firearm and individuals who possess a valid concealed carry permit, are currently allowed to carry a firearm on school campuses, including grade schools, high schools and college campuses. This legislation would, instead, prohibit these two groups form carrying firearms on school grounds, but would allow them to carry firearms within 1,000 feet of a school.

California College and University Police Chiefs Association, who were the original sponsors of this legislation and now have an oppose unless amended position, request:

> … that SB 707 be amended to remove the provisions impacting honorably retired peace officers. If those provisions are amended, we will support the bill because the bill's focus will then properly be on addressing unrestricted campus access of persons who possess concealed weapons permits pursuant Penal Code Section 26150.

> We believe that honorably retired peace officers represent a public safety asset and that it is a mistake not to have the ready availability of those officers. They are subject to stringent standards in determining if they are to be given a firearms endorsement upon retirement, must adhere to the same standards as the active officers employed by their agency in order to retain that endorsement, are subject to ongoing training requirements, and have demonstrated an ability to take positive public safety action when the occasion calls for that action. As officers sworn to protect school campuses, we consider the presence of an honorably retired peace officer – with their decades of training and professionalism – to be a distinct asset in our ability to carry out our mission. The sad reality is that active shooter incidents take place disproportionately on our campuses and an honorably retired peace officer can play a role in helping to keep such incidents in check.

SHOULD PERSONS WITH A CONCEALED CARRY PERMIT BE ALLOWED TO CARRY FIREARMS ON SCHOOL CAMPUSES, WITHOUT THE PERMISSION OF THE SCHOOL AUTHORITY?

SHOULD RETIRED PEACE OFFICERS AUTHORIZED TO CARRY A CONCEALED OR LOADED FIREARM, BE ALLOWED TO CARRY FIREARMS ON SCHOOL CAMPUSES, WITHOUT THE PERMISSION OF THE SCHOOL AUTHORITY?

**3. Argument in Support**

According to the California Chapters of the Brady Campaign to Prevent Violence:

> Existing law prohibits a person from possessing a firearm in a school zone without the written permission of certain school district officials. A school zone includes school grounds and a distance within 1,000 feet of a public or private K-12 school. Additionally, existing law prohibits a person from possessing a firearm upon the grounds of a public or private university or college campus without the written permission of specified university or college officials. Persons holding a valid license to carry a concealed and loaded weapon (CCW) and retired peace officers authorized to carry concealed and loaded firearms are exempt from the school zone and university or college prohibitions. SB 707 would allow CCW license holders to carry a concealed firearm within 1,000 feet but not on the grounds of a K-12 school and not on the campus of a university or college. Firearms, including concealed loaded handguns, could still be allowed on school grounds or campuses with the permission of school officials.

The Brady Campaign strongly believes that the discretion to allow concealed, loaded guns on a school grounds and college or university campuses must lie with school authorities, who bear the responsibility for the wellbeing and safety of their students. Under existing law, county sheriffs issue CCW permits and thereby determine who may carry a concealed, loaded gun on school grounds or campuses. This creates the opportunity for a 21 year old from a rural county to obtain a CCW permit and carry a loaded, hidden handgun in a dormitory on an urban campus.

This is one area of firearm law in which California lags behind many other states. According to the Law Center to Prevent Gun Violence, which tracks state firearm laws, 39 states and the District of Columbia prohibit those with CCW permits from possessing concealed firearms within school zones and 23 states specify that CCW permit holders may not carry concealed firearms on college and university campuses. California is not one of these states.

The national trend on this issue is disturbing as legislation has been introduced in at least 16 states that would force guns onto college and university campuses. Proponents are even suggesting that more guns on campuses would stop student rape. Additionally, legislation is being pushed in 20 states to allow people to carry hidden, loaded handguns in public without a permit. Moreover, federal reciprocity legislation (H.R. 402 and S. 498) has been introduced that would require states to recognize CCW permits from other states, including those with reprehensibly low standards. States that use law enforcement discretion, such as California, would be forced to recognize CCW permits from other states, even if the permit holder would not pass a background check in the state. The threat of national CCW reciprocity heightens the importance of SB 707 and the need to remove the exemption that allows CCW license holders to carry guns on school grounds and campuses in California. . .

Under SB 707, the number of hidden, loaded firearms legally brought onto school grounds and college campuses will be reduced and the safety of students and others will increase.

## 4. Argument in Opposition

According to Sacramento County Deputy Sheriffs' Association:

SB 707 would make criminals out of our retired peace officer members who visit a school campus. This bill would delete the exemption in current law that allows a retired peace officer who is authorized to carry a concealed or loaded firearm, to possess a firearm on a school campus. Although the bill allows school officials to determine whether or not an exception to this prohibition should ever be made, the safety of our retired members should not rest on the whim of a school official.

Retired peace officers protected and served the public while earning the enmity of those in society who ran afoul of the law. Retired officers carry their weapons as a means of personal protection. Recent attacks demonstrate the need for peace officers—even retired peace officers—to be able to defend themselves if necessary.

Forcing our retired members to choose between picking up their children or grandchildren form school or attending school events and ensuring their own ability to protect themselves or their loved ones is a decision they should not be required to make. Neither should retired officers be forced to jeopardize their safety in order to take college classes.

**-- END –**

# EXHIBIT B

Date of Hearing:  July 14, 2015
Counsel:             Gabriel Caswell

ASSEMBLY  COMMITTEE  ON PUBLIC SAFETY
Bill  Quirk, Chair

SB 707 (Wolk) − As Amended  July 2, 2015

**SUMMARY:**  Specifies that persons who possess a concealed weapons permit may not possess that firearm on school grounds as specified.   Specifically,  **this bill**:

1)  Deletes the exemption that allows a person holding a valid license to carry a concealed firearm to possess a firearm on the campus of a university or college.

2)  Permits a person holding a valid license to carry a concealed firearm to carry a firearm in an area that is within 1,000 feet of, but not on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12.

3)  Specifies further exceptions to the prohibition on carrying ammunition on school grounds:

    a)  Exempts specified active and honorably retired peace officers from the prohibition;

    b)  Exempts persons carrying ammunition onto school ground that is in a motor vehicle which is in a locked container within the trunk of the vehicle; and,

    c)  Deletes an existing exemption permitting persons who possess a concealed weapons permit.

**EXISTING LAW**:

1)  Creates the Gun-Free School Zone Act of 1995.  (Pen. Code, § 626.9 subd. (a).)

2)  Defines a "school zone" to means an area in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, or within a distance of 1,000 feet from the grounds of the public or private school.  (Pen. Code, § 626.9, subd. (e).)

3)  Provides that any person who possesses a firearm in a place that the person knows, or reasonably should know, is a school zone, unless it is with the written permission of the school district superintendent, or equivalent school authority, is punished as follows: (Pen. Code, § 626.9, subds. (f)-(i).)

    a)  Any person who possesses a firearm in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, is subject to imprisonment for two, three, or five years.

b) Any person who possesses a firearm within a distance of 1,000 feet from a public or private school providing instruction in kindergarten or grades 1 to 12, is subject to:

    i) Imprisonment in a county jail for not more than one year or by imprisonment for two, three, or five years; or,

    ii) Imprisonment for two, three, or five years, if any of the following circumstances apply:

        (1) If the person previously has been convicted of any felony, or of any specified crime.

        (2) If the person is within a class of persons prohibited from possessing or acquiring a firearm, as specified.

        (3) If the firearm is any pistol, revolver, or other firearm capable of being concealed upon the person and the offense is punished as a felony, as specified.

c) Any person who, with reckless disregard for the safety of another, discharges, or attempts to discharge, a firearm in a school zone shall be punished by imprisonment for three, five, or seven years.

d) Every person convicted under this section for a misdemeanor violation who has been convicted previously of a misdemeanor offense, as specified, must be imprisoned in a county jail for not less than three months.

e) Every person convicted under this section of a felony violation who has been convicted previously of a misdemeanor offense as specified, if probation is granted or if the execution of sentence is suspended, he or she must be imprisoned in a county jail for not less than three months.

f) Every person convicted under this section for a felony violation who has been convicted previously of any felony, as specified, if probation is granted or if the execution or imposition of sentence is suspended, he or she must be imprisoned in a county jail for not less than three months.

g) Any person who brings or possesses a loaded firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, without the written permission of the university or college president, his or her designee, or equivalent university or college authority, must be punished by imprisonment for two, three, or four years.

h) Any person who brings or possesses a firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, without the written permission of the university or college president, his or her designee, or equivalent university or college authority, must be punished by imprisonment for one, two, or three years.

**SB 707**
Page 3

4) States that the Gun-Free School Zone Act of 1995 does not apply to possession of a firearm under any of the following circumstances:  (Pen. Code, § 626.9, subd. (c).)

   a) Within a place of residence or place of business or on private property, if the place of residence, place of business, or private property is not part of the school grounds and the possession of the firearm is otherwise lawful.

   b) When the firearm is an unloaded pistol, revolver, or other firearm capable of being concealed on the person and is in a locked container or within the locked trunk of a motor vehicle.

   c) The lawful transportation of any other firearm, other than a pistol, revolver, or other firearm capable of being concealed on the person, in accordance with state law.

   d) When the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified.

   e) When the person is exempt from the prohibition against carrying a concealed firearm, as specified.

5) States that the Gun-Free School Zone Act of 1995 does not apply to: (Pen. Code, § 626.9, subd. (l).)

   a) A duly appointed peace officer;

   b) A full-time paid peace officer of another state or the federal government who is carrying out official duties while in California;

   c) Any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting the officer;

   d) A member of the military forces of this state or of the United States who is engaged in the performance of his or her duties;

   e) A person holding a valid license to carry a concealed firearm;

   f) An armored vehicle guard, engaged in the performance of his or her duties, as specified;

   g) A security guard authorized to carry a loaded firearm;

   h) An honorably retired peace officer authorized to carry a concealed or loaded firearm; or,

   i) An existing shooting range at a public or private school or university or college campus.

6) Specifies that unless it is with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority, no person shall carry ammunition or reloaded ammunition onto school grounds, except sworn law enforcement officers acting

RJN - Page 13

within the scope of their duties or persons exempted under specified peace officer exceptions to concealed weapons prohibitions.  Exempts the following persons:

a)  A duly appointed peace officer as defined.

b)  A full-time paid peace officer of another state or the federal government who is carrying out official duties while in California.

c)  Any person summoned by any of these officers to assist in making an arrest or preserving the peace while that person is actually engaged in assisting the officer.

d)  A member of the military forces of this state or of the United States who is engaged in the performance of that person's duties.

e)  A person holding a valid license to carry the firearm.

f)  An armored vehicle guard, who is engaged in the performance of that person's duties.

**FISCAL EFFECT**:

**COMMENTS**:

1)  **Author's Statement**: According to the author, "The California Gun Free School Act prohibits bringing a firearm on any school, college, or university campus, but exempts those who carry a concealed weapons permit. SB 707 repeals this exemption, yet retains the authority of campus officials to allow firearms, including concealed ones, on campus as they see deem appropriate. Closing the CCW school grounds exemption in California is consistent with efforts to maintain school and college campuses as safe, gun free, environments. SB 707 will ensure that students and parents who expect a campus to be safe and 'gun free' can be confident that their expectation is being met and that school officials are fully in charge of who is allowed to bring a firearm on their campus."

2)  **Gun-Free School Zone Act of 1995:** Enacted by AB 645 (Allen), Chapter 1015, Statutes of 1994, the Gun-Free School Zone Act, hereafter referred to as the "Act," generally provides that any person who possesses, discharges, or attempts to discharge a firearm, in a place that the person knows, or reasonably should know, is a within a distance of 1,000 feet from the grounds of any public or private school, kindergarten or Grades 1 to 12, (a "school zone"), without written permission, may be found guilty of a felony or misdemeanor and is subject to a term in county jail or state prison.

The Act does not require that notices be posted regarding prohibited conduct under the Act; therefore, it is incumbent on the individual possessing the firearm to be knowledgeable of and adhere to the Act.

A "school zone" is defined as an area in, or on the grounds of, a public or private school providing instruction in kindergarten or Grades 1 to 12, inclusive, and within a distance of 1,000 feet from the grounds of the public or private school.  The Act also provides specific definitions of a "loaded" firearm and a "locked container" for securing firearms.

3) **Effect of this Bill and the Honorably  Retired Peace Officer Amendments**:  Honorably retired peace officers authorized  to carry a concealed  or loaded firearm  and individuals who possess a valid concealed  carry permit, are currently  allowed  to carry a firearm  on school campuses, including grade schools,  high  schools and college campuses.  This legislation would, instead, prohibit CCW permit holders form carrying  firearms  on school grounds, but would allow  them to carry firearms  within  1,000 feet of a school.  The bill as originally drafted also prohibited  honorably retired peace officers  from carrying  firearms  of school campuses.  The July 2, 2015 amendments  to the bill exempt honorably  retired peace officers from the prohibition.

Opposition groups argue that because the bill now exempts honorably  retired peace officers, the bill is not in violation of the Equal Protection Clause of the 14th Amendment.  The *Firearms Policy Coalition* cites *Silveira v. Lockyer* (9th Cir. 2002) 312 F.3d 1052; which struck down a provision exempting  retired peace officers  from the prohibitions of the California Assault Weapons Control Act on Equal Protection grounds, holding  that there was no rational basis to treat retired officers differently  from similarly  situated members of the general public.  The constitutional question for this bill would be whether there is a rational basis for exempting  honorably retired peace officers  from the prohibitions of the Gun-Free School Zone Act of 1995.

4) **Argument in Support**:  According  to *The California Chapters of the Brady Campaign to Prevent Gun Violence*, "Existing law prohibits  a person from possessing a firearm  in a school zone without the written permission of certain school district officials.  A school zone includes  school grounds and a distance within  1,000 feet of a public or private  K-12 school. Additionally, existing law prohibits  a person from possessing a firearm  upon the grounds of a public or private university  or college campus without the written permission of specified university  or college officials.  Persons holding  a valid license to carry a concealed and loaded weapon (CCW) and retired peace officers authorized  to carry concealed and loaded firearms  are exempt from the school zone and university  or college prohibitions.  SB 707 would allow  persons holding  a CCW license to carry a concealed firearm  within  1,000 feet but not on the grounds of a K-12 school and not on the campus of a university  or college. Firearms, including  concealed, loaded handguns,  could still be allowed  on school grounds or campuses with the permission of school officials.

"The Brady Campaign strongly  believes that the discretion to allow hidden, loaded guns on a school grounds and college or university  campuses must lie with school authorities, who bear the responsibility for the wellbeing  and safety of their students.  Under existing law, county sheriffs  issue CCW permits and thereby determine who may carry a concealed, loaded gun on school grounds or campuses.  This creates the opportunity  for a 21 year old from a rural county to obtain a CCW permit and carry a loaded, hidden handgun  in a dormitory  on an urban campus.

"This is one area of firearm  law in which  California  lags behind many other states. According  to the Law Center to Prevent Gun Violence, which  tracks state firearm  laws, 39 states and the District of Columbia  prohibit those with CCW permits from possessing concealed firearms  within  school zones and 23 states specify that CCW permit holders may not carry concealed firearms  on college and university  campuses.  California  is not one of these states.

"The national trend on this issue is disturbing as legislation has been introduced in at least 16 states that would force guns onto college and university campuses. Proponents are even suggesting that more guns on campuses would stop student rape. Additionally, legislation is being pushed in 20 states to allow people to carry hidden, loaded handguns in public without a permit. Moreover, federal reciprocity legislation (H.R. 402 and S. 498) has been introduced that would require states to recognize CCW permits from other states, including those with reprehensibly low standards. States that use law enforcement discretion, such as California, would be forced to recognize CCW permits from other states, even if the permit holder would not pass a background check in the state where they are carrying. The threat of national CCW reciprocity heightens the importance of SB 707 and the need to remove the exemption that allows CCW license holders to carry guns on school grounds and campuses in California.

"In *Peruta v. County of San Diego*, the Ninth Circuit Court of Appeals found, in February 2014, that California's CCW standard, which requires the applicant to show good cause and gives discretion to local law enforcement, was unconstitutional. After the ruling, several counties in California began to issue more CCW permits. Although the 9th Circuit vacated and reheard *Peruta en banc* in June, the recent increase in CCW permits allows for more guns to be carried in school zones and college and university campuses.

"College aged students may engage in risky or impulsive behavior, be under the influence of alcohol or drugs, or suffer from pressure or depression and be at risk of suicide. Allowing a student CCW license holder to carry guns on college and university campuses means that more students will have access to firearms. Furthermore, the Violence Policy Center has documented homicides, suicides, accidental shootings and at least 29 mass shootings (since May 2007) committed by CCW license holders.

"Under SB 707, the number of hidden, loaded firearms legally brought onto school grounds and college campuses will be reduced and the safety of students and others will increase. The California Brady Campaign Chapters urge your AYE vote on this important measure."

5) **Argument in Opposition**: According to the *National Rifle Association of America*, "This bill was introduced in the wake of an incident involving vice principal Kent Williams of Tevis Junior High School, who was arrested in 2014 for bringing a firearm onto school property despite possessing a valid CCW license. All criminal charges against him were dropped, and he is now suing the city and police department for wrongful arrest. Williams v. Bakersfield, No. 14-01955 (E.D.Cal. filed Dec. 8, 2014).

"Senate Bill 707 would effectively prohibit CCW holders from possessing firearms on any properties that make up the grounds of a K-12 school or university, including many parking lots, common areas that may not be readily identifiable as school grounds, and student apartment buildings. Due to imprecise language used in current penal code section 626.9, SB 707 will further promote inadvertent violations and unjust prosecutions of otherwise law-abiding firearm owners. This legislation raises significant concerns under the Second Amendment by further infringing the rights of law-abiding—and properly licensed and trained individuals—to possess a firearm for self-defense. From a practical perspective, SB 707 improperly expands prohibitions on the possession of firearms by persons who pose no threat to public safety. In doing so, this legislation would leave these individuals, and all other persons on California campuses, defenseless against violent criminals that target

California schools and universities without regard for these restrictions, barring what a majority of law enforcement officers believe to be the most effective line of defense against mass shootings."

6) **Prior Legislation**:

a) AB 2609 (Lampert), Chapter 115, Statutes of 1998, clarified the Gun Free School Zone Act (Act) to forbid the bringing or possession of any firearm on the grounds of, or in any buildings owned or operated by a public or private university or college used for the purpose of student housing, teaching, research or administration, that are contiguous or are clearly marked university property. Exempts specified law enforcement and security personnel.

b) AB 624 (Allen), Chapter 659, Statutes of 1995, passed the Gun-Free School Zone Act of 1995.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California College and University Police Chiefs Association (Sponsor)
Association for California School Administrators
Association for Los Angeles Deputy Sheriffs
California Association of Code Enforcement Officers
California Chapters of the Brady Campaign
California Correctional Supervisors Organization
California Narcotic Officers Association
California Police Chiefs Association
California School Boards Association
California School Employees Association
California State PTA
California State University System
Courage Campaign
Davis College Democrats
Davis Joint Unified School District
Fraternal Order of Police
L.A. County Probation Officers Union
Law Center to Prevent Gun Violence
Long Beach Police Officers Association
Los Angeles County Democratic Party
Los Angeles County Professional Peace Officers Association
Los Angeles Police Protective League
Los Angeles Unified School District
Peace Officers Research Association of California
Physicians for Social Responsibility, Sacramento Chapter
Retired and Disabled Police of America
Riverside Sheriffs' Association
Sacramento Deputy Sheriffs' Association

**SB 707**
Page 8

Santa Ana Police Officers Association
South County Citizens Against Gun Violence
Violence Prevention Coalition
Women Against Gun Violence
Youth Alive

1 private individual

**Opposition**

California Association of Licensed Investigators
California Rifle and Pistol Association
Firearms Policy Coalition
Gun Owners of California
National Rifle Association of America

**Analysis Prepared by**: Gabriel Caswell / PUB. S. / (916) 319-3744

# EXHIBIT C

1

2

3                                                        FILED

4                                                    SEP 03 2004

5
                                              CLERK, U.S. DISTRICT COURT
6                                             EASTERN DISTRICT OF CALIFORNIA

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11

12  DAVID K. MEHL; LOK T. LAU;
    FRANK FLORES,
13                                          NO. CIV. S 03-2682 MCE KJM
            Plaintiffs,
14                                          MEMORANDUM AND ORDER
        v.
15                                                    C/mCE
    LOU BLANAS, individually and
16  in his official capacity as
    SHERIFF OF COUNTY OF
17  SACRAMENTO; COUNTY OF
    SACRAMENTO, SHERIFF'S
18  DEPARTMENT; COUNTY OF
    SACRAMENTO; BILL LOCKYER,
19  Attorney General, State of
    California; RANDI ROSSI, State
20  Firearms Director and
    Custodian of Records,
21
            Defendants.
22                            ----oo0oo----

23

24

25      Defendants Bill Lockyer ("Lockyer") and Randi Rossi

26  ("Rossi") (collectively "Defendants") filed this motion to

27  dismiss Plaintiffs' first amended complaint.  Defendants contend

28  first that they are not proper defendants because they do not

                                   1

1    have the authority to issue Carry Concealed Weapons ("CCW")

2    permits, and therefore no controversy exists between Plaintiffs

3    and Defendants as needed for subject matter jurisdiction.   Fed.

4    R. Civ. P. 12(b)(1).[1]   Alternatively, Defendants claim that

5    Plaintiffs' complaint fails to state a claim upon which relief

6    may be granted pursuant to Rule 12(b)(6).   For the reasons

7    explained below, Defendants motion to dismiss is GRANTED.

8

9                              **BACKGROUND**

10

11       In California, it is against the law to carry a concealed

12   firearm.   Cal. Penal Code § 12025.   Carrying a concealed weapon

13   in violation of this statute can be either a misdemeanor or

14   felony.   If a California resident wishes to carry a concealed

15   firearm, he or she must apply for a permit allowing him or her to

16   do so.   Permits to carry concealed weapons are issued by the

17   chief of police or the county sheriff, and require the applicant

18   to complete the application form, complete a course of training

19   on firearm safety, and demonstrate that good cause exists for

20   issuance.   Cal. Penal Code § 12050.

21       An exception to the statute governing the carrying of

22   concealed firearms exists such that certain law enforcement

23   officers and honorably retired law enforcement officers need not

24   demonstrate good cause to receive a permit.   Cal. Penal Code §

25   12027.

26       Plaintiffs are California residents who have applied for

27   ────────────────

28       [1]   Unless otherwise stated, all further references to a
     "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

                                  2

1  permits to carry concealed weapons and had their applications

2  denied.   On December 30, 2003, Plaintiffs filed their complaint

3  in this matter, alleging several 42 U.S.C. § 1983 claims based on

4  various constitutional violations.   Defendants filed a motion to

5  dismiss the complaint that is virtually identical to the present

6  motion.   Plaintiffs did not oppose that motion, but requested

7  leave to amend to correct the deficiencies.   By order dated March

8  25, 2004, this Court granted Defendants' first motion to dismiss,

9  and granted leave to amend.   On April 23, 2004, Plaintiffs filed

10 their first amended complaint.   Defendants again moved to

11 dismiss, claiming the first amended complaint, like the original

12 complaint, fails to state a claim upon which relief may be

13 granted, and claiming that there is no present case or

14 controversy between Plaintiffs and Defendants.   Oral argument on

15 this second motion to dismiss was held on June 28, 2004.[2]

16

17                              **STANDARD**

18

19      On a motion to dismiss for failure to state a claim under

20 Rule 12(b)(6), all allegations of material fact must be accepted

21 as true and construed in the light most favorable to the

22 nonmoving party.   Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

23 337-38 (9th Cir. 1996).   A complaint will not be dismissed for

24 failure to state a claim "'unless it appears beyond doubt that

25 plaintiff can prove no set of facts in support of her claim that

26 would entitle her to relief.'"   Yamaguchi v. Dep't of the Air

27 _____

28      [2]   Defendants' counsel was not present at oral argument
due to unforseen military commitments.

3

1   <u>Force</u>, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting <u>Lewis v. Tel.</u>

2   <u>Employees Credit Union</u>, 87 F.3d 1537, 1545 (9th Cir. 1996).

3        "Generally, a district court may not consider any material

4   beyond the pleadings in ruling on a Rule 12(b)(6) motion." <u>Hal</u>

5   <u>Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555

6   n.19 (9th Cir.1990); <u>see also</u> <u>Arpin v. Santa Clara Valley Transp.</u>

7   <u>Agency</u>, 261 F.3d 912, 925 (9th Cir. 2001).  However, the court

8   may "consider material which has been properly submitted as part

9   of the complaint" when deciding a Rule 12(b)(6) motion.  <u>Hal</u>

10  <u>Roach Studios</u>, 896 F.2d at 1555 n.19.

11       If the court grants a motion to dismiss a complaint, it must

12  then decide whether to grant leave to amend.  The Court should

13  "freely give[]" leave to amend when there is no "undue delay, bad

14  faith[,] dilatory motive on the part of the movant, . . . undue

15  prejudice to the opposing party by virtue of . . . the amendment,

16  [or] futility of the amendment. . . ."  Fed. R. Civ. P. 15(a);

17  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Generally, leave to

18  amend is denied when it is clear that the deficiencies of the

19  complaint cannot be cured by amendment.  <u>DeSoto v. Yellow Freight</u>

20  <u>Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

21

22                              **ANALYSIS**

23

24  **1.    Proper Defendants - Case or Controversy Requirement**

25

26       Defendants first contend that there is no case or

27  controversy between themselves and Plaintiffs because Defendants

28  have no authority to issue, or to influence the issuance of, a

                                    4

1    CCW.  CCWs may only be issued by a sheriff or police chief, not

2    the attorney general or state firearms director.  Cal. Penal Code

3    § 12050.  As such, Defendants contend that they could not have

4    violated Plaintiffs' constitutional rights as alleged in the

5    complaint.

6        Plaintiffs contend that both Lockyer and Rossi are proper

7    defendants.  Plaintiffs rely on the fact that under the

8    California Constitution, Lockyer, as the Attorney General, is the

9    "chief law officer of the State."  Cal. Const. Art. 5 ¶ 13.

10   Additionally, the "Attorney General shall have direct supervision

11   over every district attorney and sheriff . . . in all matters

12   pertaining to the duties of their respective offices. . . ."  Id.

13   Thus, Plaintiffs contend that Lockyer is responsible for the acts

14   of the Sheriff.

15       Neither party presented the Court with any authority

16   regarding this issue, however.  On its own, the Court has found

17   conflicting authority regarding the ability to pass liability

18   from the sheriff to the Attorney General based upon the provision

19   of California's Constitution Plaintiffs rely upon.  The Ninth

20   Circuit has twice held that the sheriff acts for the county

21   rather than the state when performing law enforcement duties, and

22   therefore liability does not pass to the state.  Bishop Paiute

23   Tribe v. County of Inyo, 291 F.3d 549 (9th Cir. 2002), vacated on

24   other grounds and remanded, Inyo County v. Bishop-Shoshone

25   Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701

26   (2003); Brewster v. Shasta County, 275 F.3d 803 (9th Cir. 2001).

27   "That the Attorney General has authority to supervise state law

28   enforcement officers does not transform sheriffs into state

5

1  actors because, taken to its logical extreme, this provision

2  would immunize all law enforcement agencies in the State and

3  'thereby render[] meaningless the decision in Monell[ v. N.Y.

4  Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)], which

5  preserves § 1983 actions against local governments.'" Cortez v.

6  County of Los Angeles, 294 F.3d 1186, 1191-92 (9th Cir. 2002)

7  (quoting Bishop Paiute Tribe, 275 F.3d at 908).  The California

8  Supreme Court, however, has held that a California Sheriff acts

9  for the state when performing law enforcement duties, and

10  therefore liability does pass from the sheriff to the Attorney

11  General.  Venegas v. County of Los Angeles, 32 Cal. 4th 820

12  (2004).[3]

13      Neither party has addressed the question of whether the

14  issuance of CCWs constitutes law enforcement activities, or

15  whether a sheriff acts as an agent of the state or the county

16  when issuing a CCW.  It is established that in order to "hold a

17  local government liable for an official's conduct, a plaintiff

18  must first establish that the official (1) had final policymaking

19  authority 'concerning the action alleged to have caused the

20  particular constitutional or statutory violation at issue' and

21  (2) was the policymaker for the local governing body for the

22  purposes of the particular act." Weiner v. San Diego County, 210

23  F.3d 1025, 1028 (9th Cir. 2000) (quoting McMillian v. Monroe

24  _____

25      [3]   Each of these cases concerned claims brought against a
    sheriff, and the sheriff's subsequent attempt to escape liability
26  by claiming that the sheriff acts as an agent of the state.
    Therefore, the argument followed, the sheriff would be immune
    from liability under the Eleventh Amendment.  The Court was
27  unable to find, and the parties did not provide, a case in which
    the plaintiff filed suit against the Attorney General.  These
28  cases are, however, instructive.

1  County, 520 U.S. 781, 785 (1997)).  In this case, the Court

2  elects to follow the holdings of the Ninth Circuit and determine

3  that the sheriff acts as the final policymaker for the county

4  when issuing CCWs.  Accordingly, Plaintiffs have failed to

5  establish any connection between the Attorney General and a

6  county sheriff insofar as the issuance of CCWs is concerned.

7  Defendants' motion to dismiss as to Defendant Lockyer is GRANTED.

8      Plaintiffs do not, however, offer any basis for their claim

9  against Defendant Rossi, the State Firearms Director and

10 Custodian of Records.  There is no constitutional or statutory

11 basis cited for imposition of liability upon him for the acts of

12 the sheriff.  Because Rossi lacks the power to issue CCWs on his

13 own, and cannot be held responsible for those that have the

14 power, either the sheriff or chief of police, Plaintiffs have not

15 pled any valid claims against Rossi.  Accordingly, Defendants'

16 motion to dismiss as to Defendant Rossi is GRANTED.

17

18 **2.  Fourteenth Amendment Equal Protection Clause**

19

20     The Court realizes that finding that Lockyer and Rossi are

21 not proper defendants effectively ends the inquiry.  However,

22 even if Lockyer could be considered a proper defendant,

23 Plaintiffs' complaint would still fail to state a claim.

24 Furthermore, the Court chooses to address, briefly, several of

25 the arguments Plaintiffs make in support of their claim.

26     Plaintiffs claim two separate violations of their rights

27 under the Fourteenth Amendment's Equal Protection Clause.  First,

28 they claim that the application of the laws requiring CCW permits

7

1    discriminates based on race and nationality.  Second, Plaintiffs
2    claim that retired police officers are given unfair preferential
3    treatment.

4

5    **A.   Race and National Origin Discrimination**

6

7          Plaintiffs begin their argument that Lockyer is liable for
8    discrimination with the observation that there is no place for
9    the applicant to indicate his/her race on the application for a
10   CCW.  Plaintiffs next cite People v. Rappard, 28 Cal. App. 3d
11   302, a 32 year old California Court of Appeal decision, for the
12   proposition that "California courts have already determined that
13   a racially biased purpose existed in establishing" the law that
14   created the CCW system.  Opp'n, at 5; Compl., ¶ 77.  Due to this
15   racially biased purpose, Plaintiffs contend that Lockyer has a
16   duty to monitor the state laws concerning CCW issuance to ensure
17   that they are applied fairly.

18         Contrary to Plaintiffs' position, however, Rappard had
19   nothing to do with racial discrimination; the decision does not
20   even mention racial discrimination.  Rather, the decision held
21   invalid California Penal Code section 12021, a statute that
22   prohibited possession of a firearm capable of being concealed by
23   "any person who is not a citizen of the United States. . . ."
24   Thus, this statute discriminated against aliens, not races.
25   Furthermore, the language "is not a citizen of the United
26   States", which was held discriminatory by Rappard, was deleted in
27   the 1974 Amendment to the statute, thereby correcting the
28   unconstitutionality.  Therefore, contrary to Plaintiffs'

1   argument, <u>Rappard</u> does not establish any affirmative duty on the

2   Attorney General to monitor state law to guard against the

3   possibility of discriminatory application.

4        The only direct act on Lockyer's part that Plaintiffs claim

5   support their discrimination claim was drafting an application

6   for CCW permits that omits any mention of race or national

7   origin.[4]  Compl. ¶¶ 82-91.  Plaintiffs claim that in doing so,

8   Lockyer tacitly allows the other defendants to discriminate based

9   on race and national origin.  Compl. ¶ 83.  Any argument that the

10  failure to provide a means for the use of race as a factor in

11  considering the application amounts to racial discrimination must

12  fail as a matter of law.  Racial discrimination occurs when an

13  action is taken because of a person's race.  Therefore, taking an

14  action without considering, or even knowing, the person's race

15  cannot be racial discrimination.[5]

16       The Court finds this argument to be ridiculous and totally

17  without merit, and declines to give it any legitimacy by further

18  discussion.  Defendants' motion to dismiss is GRANTED with

19  prejudice.

20

21  _____

22       [4]    Plaintiffs contend that race must be used as a factor
    in considering the application because "a young black male in
23  California under the age of 25 has a exceedingly [sic] far
    greater chance of being murdered than all law enforcement
24  officers combined throughout the entire United States."  Compl. ¶
    97; Opp'n at 13.  Not surprisingly, Plaintiffs offer no support
25  for this baseless contention.

26       [5]    The Court emphasizes that the only action Lockyer is
    alleged to have taken is drafting an application that does not
27  contain a place for the applicant to mark his or her race.  The
    Court does not hold that there is no discrimination in the actual
28  issuance of CCWs, but rather holds that merely drafting the
    application was not discriminatory.

                                    9

**B.    Preferential Treatment - Retired Peace Officers**

Plaintiffs next contend that the challenged statutes are unconstitutional because they grant retired law enforcement officers special treatment in allowing them to carry concealed weapons without having to show good cause for a permit. Specifically, California Penal Code sections 12027 and 12031(b) state that the statutes prohibiting the carrying of concealed weapons, section 12025, and loaded weapons, section 12031(a), do not apply to peace officers or to honorably retired peace officers.

Plaintiffs contend that Silveira v. Lockyer compels judgment on the pleadings in their favor.  312 F.3d 1062 (9th Cir. 2002) reh'g en banc denied, 328 F.3d 567, cert. denied, 124 S. Ct. 803 (2003).  It does not.  Silveira concerned California's ban on assault rifles, and the court upheld the statute in every respect save one.  The court found no rational basis for allowing retired peace officers to possess assault weapons without any restriction on use when active peace officers were permitted to possess and use such weapons when off-duty only for law enforcement purposes. Id. at 1090-92.  The basis for allowing active off-duty officers to possess and use assault weapons was that a peace officer is on call 24 hours a day, and may be called upon at any time to respond to a call for help.  The same is not true of retired officers.  Because they are not on call at all after retirement, there was no rational basis in allowing retired officers to keep assault weapons.  Id.

The justification and rationale for exempting retired peace

10

1  officers from the CCW is not the same as for the exception to the

2  assault weapon ban in <u>Silveira</u>.  The justification for a CCW is

3  personal protection, not public protection.  Peace officers were

4  entitled to carry assault weapons so that they would not be

5  inadequately armed to confront criminals while protecting the

6  public.  On the other hand, they are entitled to carry concealed

7  weapons to protect themselves from the enemies they have made in

8  performing their duties.  While an officer's duty to respond to

9  the public's calls for help stops when he retires, the threat of

10  danger from enemies he might have made during his service does

11  not.  Therefore, there is a rational basis for allowing a retired

12  officer to continue to carry a concealed weapon, even though

13  there was no rational basis for allowing the same officer to keep

14  an assault weapon.  Because "[P]laintiffs have no constitutional

15  right to own or possess weapons, heightened scrutiny does not

16  apply" and the statute need meet only rational basis review.

17  <u>Silveira</u>, 312 F.3d at 1088.  Therefore, Plaintiffs are not

18  entitled to judgment on the pleadings on their second claim, and

19  their motion is DENIED.

20      Having concluded that the statutory exception allowing

21  retired officers to carry concealed weapons is rationally related

22  to a legitimate governmental interest, protecting retired law

23  enforcement officers, it follows that the second claim fails to

24  state a claim upon which relief may be granted.  Plaintiffs'

25  arguments to the contrary are without merit.

26      Plaintiffs contend that all one must do is "join the club",

27  that is, become a law enforcement officer and quit the following

28  day, to secure the right to carry a concealed weapon.  Becoming a

11

RJN - Page 30

law enforcement officer is not a club one joins, however. Furthermore, the statute gives preference only to those officers "who have qualified for, and accepted a service or disability retirement."  Cal. Penal Code § 12027(a)(1)(A).  Thus, one who works for one day as a law enforcement officer and quits would not become exempt from the requirement to apply for a permit to carry a concealed weapon.

Plaintiffs also contend that there is no rational basis for the statutory scheme requiring CCW permits because it allows officers that are forced to retire due to a mental breakdown or alcoholism to carry a concealed weapon, even though the agencies they retire from no longer trust them to carry weapons. Plaintiffs quote at length from California Penal Code section 12027.1, specifically subsections (b), (c), and (d).  They neglect to quote section 12027.1(e), however, which states that "[n]o peace officer who is retired after January 1, 1989, because of a psychological disability shall be issued an endorsement to carry a concealed and loaded firearm pursuant to this section." Thus, Plaintiffs' concerns about mentally unstable retired officers swarming the streets with concealed weapons is without merit.

In sum, it is clear that the statutory scheme allowing retired officers to carry concealed weapons passes a rational basis review.  Therefore, Defendants' motion to dismiss the second claim is GRANTED.

//

//

//

3.    **Fourteenth Amendment Privileges and Immunities Clause**

Plaintiffs, in their fifth claim, allege that the denial of their CCW applications violates their rights under the Fourteenth Amendment's Privileges and Immunities Clause.  In their opposition, Plaintiffs assert that their claim represents a "cutting edge position justifying careful judicial scrutiny". Opp'n at 2.  Plaintiffs then spend 21 pages taking the Court on a rambling history lesson starting at the Slaughter House Cases and the Freedmen's Bureau Act, and ending at Saenz v. Roe, 526 U.S. 489 (1999).  Along the way, Plaintiffs offer a full page bibliography which represents the "manageable number of cases, books, articles, and other authorities [that] outline this important debate", seemingly expecting the Court to study each and discern the relevant material from each on its own.  Opp'n at 22-23.  All this is in an apparent attempt to convince the Court that the Fourteenth Amendment's Privileges and Immunities Clause is not dead, and therefore can be the basis of a claim for relief.  What Plaintiffs do not do anywhere in these 21 pages, however, is explain how the denial of their CCW applications would lead to a violation of that clause.

At the end of this long trail, Plaintiffs proclaim that "[f]or the first time, this Court, and the Ninth Circuit, will be asked to define whether the [Fourteenth Amendment's Privileges and Immunities] Clause includes the fundamental right to keep and bear arms . . . ."  Opp'n at 35.  Thus, it is finally clear to the Court that Plaintiffs' errors are two-fold.  First, Plaintiffs equate the right to keep and bear arms with the right

13

1  to carry firearms concealed, without ever analyzing, or even

2  acknowledging, a possible difference between the two.  In their

3  opposition, Plaintiffs do not even address the particular subject

4  of their lawsuit, which is the denial of a permit to carry

5  concealed weapons.  Even if the Court were to assume that if

6  Plaintiffs were prevented from possessing firearms a Privileges

7  and Immunities violation would be found, it does not follow that

8  merely being denied a permit to carry those firearms concealed

9  amounts to such a violation.  Plaintiffs have done nothing to

10 persuade, indeed, they have not attempted to persuade, the Court

11 that possession of a firearm equates to carrying that firearm

12 concealed.

13    Second, Plaintiffs label the right to keep and bear arms as

14 a fundamental right.  In doing so, Plaintiffs claim support from

15 some 35 Supreme Court cases, while only citing "strong dictum"

16 from one case, that being Scott v. Sanford, 60 U.S. 393 (1856).

17 Opp'n at 35.  Furthermore, Plaintiffs completely ignore the clear

18 holding of Silveira v. Lockyer, 312 F.3d 1052, a 2002 Ninth

19 Circuit case, which represents binding authority on this Court.

20 In Silveira the court analyzed rights guaranteed under the Second

21 Amendment and held that the Second Amendment right to keep and

22 bear arms is a collective right that "guarantees the right of the

23 people to maintain effective state militias, but does not provide

24 any type of individual right to own or possess weapons." Id. at

25 1060-61.  The court went on to say that "the federal and state

26 governments have the full authority to enact prohibitions and

27 restrictions on the use and possession of firearms, subject only

28 to generally applicable constitutional constraints, such as due

14

1  process, equal protection, and the like." Id. at 1060.

2  Plaintiffs' failure to confront Silveira is even more egregious

3  when the Court considers that Mehl was a plaintiff in Silveira,

4  and Gary Gorski, Plaintiffs' current counsel, represented the

5  plaintiffs in Silveira.

6      Denying Plaintiffs the right to carry a concealed firearm

7  does not constitute a violation of the Privileges and Immunities

8  Clause.  Accordingly, Defendants' motion to dismiss the fifth

9  claim is GRANTED with prejudice.

10

11  **4.   Second and Ninth Amendments**

12

13      In their opposition, Plaintiffs admit that the Ninth Circuit

14  does not recognize Plaintiffs' claims brought under the Second or

15  Ninth Amendments.  Plaintiffs state they brought these claims to

16  preserve an appeal.  As Plaintiffs do not oppose the motion to

17  dismiss as to the fourth and sixth claims, the motion is GRANTED

18  with prejudice as to those claims.

19

20  **5.   7th Claim - Preliminary Injunction and Declaratory Relief**

21

22      Plaintiffs' first amended complaint contains a seventh claim

23  seeking a preliminary injunction.  This claim contains two

24  paragraphs.  The first incorporates by reference all 138 prior

25  paragraphs.  The second states, in its entirety, "Plaintiff seeks

26  a declaration from the court regarding the constitutionality of

27  the CCW statutes and policies enforced and promulgated by

28  Defendants."  Compl. ¶ 140.  This is not a separate claim for

15

1  relief upon which relief may be based, but rather consists of

2  nothing more than a request for a remedy based upon a favorable

3  finding on the first six claims.  Therefore, this seventh claim

4  for relief is DISMISSED.

5

6                              **CONCLUSION**

7

8       For the reasons explained above, Plaintiffs' First Amended

9  Complaint against Defendants Lockyer and Rossi is DISMISSED.

10

11      IT IS SO ORDERED.

12

13 DATED:  _____9/2/04_____

14                              _____

15                              MORRISON C. ENGLAND, Jr.
                                UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
for the
Eastern District of California
September 3, 2004


* * CERTIFICATE OF SERVICE * *


2:03-cv-02682


Mehl

   v.

Blanas

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on September 3, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

      Gary William Gorski               AS/MCE
      Law Offices of Gary W Gorski
      8549 Nephi Way
      Fair Oaks, CA  95628

      Jeri Lynn Pappone
      Longyear O'Dea and Lavra
      3620 American River Drive
      Suite 230
      Sacramento, CA  95864-5923

      John Andrej Lavra
      Longyear O'Dea and Lavra
      3620 American River Drive
      Suite 230
      Sacramento, CA  95864-5923

      Timothy Lee Rieger
      Attorney General's Office for the State of California
      PO Box 944255
      1300 I Street
      Suite 125
      Sacramento, CA  94244-2550

Jack L. Wagner, Clerk

by: Deputy Clerk

RJN - Page 36

# CERTIFICATE OF SERVICE

Case Name:   **Ulises Garcia, et al. v. Kamala**        No.   **2:16-cv-02572-BRO-AFM**
**D. Harris**

I hereby certify that on <u>June 10, 2016</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REQUEST FOR JUDICIAL NOTICE FILED IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY CALIFORNIA ATTORNEY GENERAL KAMALA D. HARRIS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 10, 2016</u>, at Los Angeles, California.

| Angela Artiga | /s/ Angela Artiga |
|:---:|:---:|
| Declarant | Signature |

SA2016101989
52131223.doc