BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULISES GARCIA; JORDAN GALLINGER; BRIAN HILL; BROOKE HILL; CRAIG DeLUZ; SCOTT DIPMAN; ALBERT DUNCAN; TRACEY GRAHAM; LISA JANG; DENNIS SERBU; MICHAEL VEREDAS; FIREARMS POLICY FOUNDATION; FIREARMS POLICY COALITION; MADISON SOCIETY FOUNDATION; and THE CALGUNS FOUNDATION,<br><br>                    Plaintiffs,<br><br>         v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California,<br><br>                    Defendant. | Case No.:  2:16-cv-02572-BRO-AFM<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Hearing Date: August 8, 2016<br>Time: 1:30 p.m.<br>Courtroom: 14<br>Judge: Hon. Beverly Reid O'Connell<br><br>Action filed April 14, 2016 |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................1

FACTUAL BACKGROUND............................................... 1

    A.    The Gun-Free School Zone Act and SB 707. ....................1

    B.    Plaintiffs Are Private Citizens Authorized To Carry Concealed Weapons. ..................................................................3

LEGAL STANDARD ........................................................ 6

ARGUMENT ......................................................................7

    A.    Plaintiffs Have Adequately Alleged A Control Group To State An Equal Protection Claim ..............................................7

    B.    The Retired Peace Officer Exemption Violates The Equal Protection Clause. ..................................................................8

        1.    Favoring Retired Peace Officer Civilians Over Similarly-Situated Civilians With Carry Licenses Bears No Rational Relation To The Purpose of the Gun-Free School Zone Act. ......................9

        2. The    Retired Peace Officer Classification Further Violates The Equal Protection Clause Because It Is Simply A Benefit Conferred On A Politically Powerful Class That Is Denied To A Politically Unpopular Class. ..........................................16

    C. The    Organizational Plaintiffs Have Standing. ....................18

CONCLUSION ...................................................................19

# TABLE OF AUTHORITIES

## Cases

*Arizona Dream Act Coalition v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 7

*City of Cleburne v. Cleburne Living Center, Inc.*,
  473 U.S. 432 (1985) ........................................................................... 18

*Gerhart v. Lake County Montana*,
  637 F.3d 1013 (9th Cir. 2011) ......................................................... 9, 12

*Heller v. Doe by Doe*,
  509 U.S. 312 (1993) ........................................................................ 9, 14

*Lawrence v. Texas*,
  539 U.S. 558 (2003) ........................................................................... 18

*Mathews v. Lucas*,
  427 U.S. 495 (1976) ............................................................................. 9

*Mehl v. Blanas*,
  No. Civ. s 03-2682 MCE KJM (E.D. Cal. Sept. 3, 2004) ................. 1, 12

*Reed v. Reed*,
  404 U.S. 71 (1971) ............................................................................... 8

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ............................................................... 7

*Rinaldi v. Yeager*,
  384 U.S. 305 (1966) ........................................................................... 18

*Romer v. Evans*,
  517 U.S. 620 (1996) ........................................................................ 9, 14

*Royster Guano Co. v. Virginia*,
  253 U.S. 412 (1920) ............................................................................. 8

*Silveira v. Lockyer*,
  312 F.3d 1052 (9th Cir. 2002) ...................................................... 1, 9, 15

*Silvester v. Harris*,
  41 F. Supp. 3d 927 (E.D. Cal. 2014) .................................................. 18

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) ............................................................. 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*U. S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973) .................................................................. 14, 18

*Walgreen Co. v. City & Cnty. of San Francisco*,
   185 Cal.App.4th 424, 428 (2010) ............................................ 15

**Statutes**

Cal. Penal Code § 626.9 .......................................................... *passim*

Cal. Penal Code § 25450 ........................................................ 5, 15

Cal. Penal Code § 25455 ............................................................ 5

Cal. Penal Code § 25650(a) ........................................................ 6

Cal. Penal Code § 26150 ......................................................... 3, 4

Cal. Penal Code § 26155 ............................................................ 4

Cal. Penal Code § 830.2 ........................................................... 15

Cal. Penal Code § 26150 .......................................................... 7, 8

Fed R. Civ. P. 12(b)(6) ............................................................... 6

Cal. Fish & Game Code § 830.2(e) ........................................... 5

Cal. Food & Agric. Code § 3332 ........................................... 5, 15

Cal. Pub. Resources Code § 830.2 .............................................. 5

**Other Authorities**

Att'y Gen. Op. No. 09-901,
   93 Ops. Cal. Atty. Gen. 130 (2010) .................................. 11, 16

Los Angeles County Sheriff's Department,
   Concealed Weapon Licensing Policy ................................... 5, 14

# I.

# INTRODUCTION

The main problem with the State's motion to dismiss is that its focus is too narrow.  The State argues that the retired peace officer exemption is rational because it promotes this group of civilians' self defense.  That is not the right question.  The right question is whether the classification here is rationally related to achieving the broader purpose of the "Gun Free School Zone Act."  It is not.  This is a statute designed to restrict access to guns on school grounds.  Until the 2015 amendments, plaintiffs were on equal footing with retired peace officers—as licensed civilians, they could possess guns on school grounds consistent with their licensure.  Now they are criminals if they do so.  But the similarly-situated retired peace officers are not.

The Ninth Circuit's decision in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), is controlling here.  In *Silveira*, the Ninth Circuit concluded that favoring retired peace officers over similarly-situated civilians violated the Equal Protection Clause: favoring retired peace officers hoping to enjoy greater access to firearms didn't make sense in the context of a statute (there, the Assault Weapons Control Act) whose overall aim was *restricting* access to firearms.  The same is true here. The State's reliance on the unpublished *Mehl v. Blanas* case from the Eastern District, which arose in the context of the licensing scheme designed to *facilitate* access to firearms, is plainly distinguishable.

The Complaint states a cause of action for violation of the Equal Protection Clause.  The motion to dismiss should be denied.

# II.

# FACTUAL BACKGROUND

## A.  The Gun-Free School Zone Act and SB 707.

The Gun-Free School Zone Act of 1995, California Penal Code section 626.9, prohibits persons from possessing a firearm in a school zone, which is defined as "an area in, or on the grounds of, a public or private school providing instruction in

kindergarten or grades 1 to 12, inclusive, or within a distance of 1,000 feet from the grounds of the public or private school." Penal Code § 626.9(e)(4). Violation of the Act is a misdemeanor or felony. *See id.*, subd. (f).

California law had criminalized possession of a firearm on school grounds since 1967, when the Legislature passed the so-called Mulford Act broadly prohibiting the carry of loaded firearms in public places. Stats. 1967, ch. 960, § 2 (adding former Penal Code section 171c). The portion of Penal Code section 171c concerning school zones was later moved to Penal Code section 626.9; with the Act's passage in 1994, the Legislature stiffened the applicable penalties for bringing a firearm into a school zone.

The Act contains an exemption for "duly appointed peace officer[s]" who remain in service. Penal Code § 626.9(l). The Act's prohibition likewise does not apply to a few classes of people who are licensed to carry a firearm as part of their professional duties so long as they are on the job:

> [A] full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting the officer, a member of the military forces of this state or of the United States who is engaged in the performance of his or her duties, or an armored vehicle guard, engaged in the performance of his or her duties, as defined in subdivision (d) of Section 7582.1 of the Business and Professions Code.

Penal Code § 626.9(l); *see also id.*, subd. (m) (exempting certain security guards authorized to carry a loaded firearm, while acting within the course and scope of their employment).

Thus, the purpose of the Gun-Free School Zone Act is, as the name demonstrates, to make schools "gun-free," except in the case of peace officers and security personnel who are performing their duties.

As originally enacted, however, the Act contained a blanket exemption for all private citizens who were authorized to carry a concealed firearm pursuant to the

licensing provisions of Penal Code section 26150.  Former Cal. Penal Code § 626.9(1) exempted "a person holding a valid license to carry the firearm" pursuant to then Penal Code section 12050 (predecessor to current Penal Code section 26150).  The Act also exempted "honorably retired peace officer[s] authorized to carry a concealed or loaded firearm" under several different Penal Code sections.  *Id.*, subd. (o) (listing separate statutory authorizations).[1]

In 2015, the Legislature considered amendments to the Act.  As initially proposed, the Bill sought to eliminate both the CCW and retired law enforcement exemptions.  By doing so, the Legislature would have made it a crime for a member of either of these groups to possess a firearm on school grounds, even though they were authorized to carry the firearm generally throughout the State.  Sen. Bill No. 707 (2014–2015 Reg. Sess.) as introduced Feb. 27, 2015.  Following heavy lobbying by interest groups supporting peace officers, the Bill was later amended to restore the retired "peace officer" exemption.  The Bill ultimately removed the exemption for carry licensees on school grounds—thereby criminalizing possession of a firearm on school grounds by such licensees.  It also added a provision authorizing carry licensees to carry a firearm "within a distance of 1,000 feet from the grounds of the public or private school."  Sen. Bill No. 707 (2014–2015 Reg. Sess., Wolk), Stats. 2015, ch. 766; Cal. Penal Code § 626.9(c)(5).

The legislative record contains no legislative findings explaining the purposes of the 2015 amendments.

## B.    Plaintiffs Are Private Citizens Authorized To Carry Concealed Weapons.

Individual plaintiffs are responsible, law-abiding citizens who possess licenses to carry concealed weapons under California law:[2]

---

[1]    Both exemptions date back to the original 1967 law.  Stats. 1967, ch. 960, § 2 (exempting "honorably retired" peace officers and "person[s] holding a valid license to carry [a] firearm").

[2]    In addition to the individual Plaintiffs, there are four organizational Plaintiffs (Firearms Policy Foundation, Firearms Policy Coalition, Madison Society Foundation, and Calguns Foundation).  Each of the organizations are dedicated to

- Plaintiff Ulises Garcia, M.D. is a Board Certified Emergency Medicine specialist practicing in the San Fernando Valley of Southern California.  Dr. Garcia is married and has three school-age children.  He sought and obtained a carry license to protect himself and his family in response to multiple threats of violence from a former patient.  (Compl., ¶ 10.)

- Plaintiff Jordan Gallinger is a veteran of the United States Marine Corps who served in the war in Afghanistan and qualified as an expert in the Marine Corps Combat Marksmanship Program.  He is currently enrolled as a full-time student at California State University, San Bernardino.  (Compl., ¶ 11.)

- Plaintiffs Brian and Brooke Hill have two school-age children, and both regularly carried concealed weapons at their children's respective schools before Senate Bill 707 went into effect on January 1, 2016.  (Compl., ¶ 12.)

- Plaintiff Craig DeLuz serves as the President of the Robla School District Board of Trustees.  He also serves as a coach for the cross country and track and field teams at Rio Linda High School.  (Compl., ¶ 13.)

- Plaintiff Scott Dipman is the father of two school-age sons with special needs who must be accompanied to their classrooms each morning.  (Compl., ¶ 14.)

- Plaintiff Albert Duncan served as a flight medic in the United States Army, and currently works as a firefighter-paramedic for the Oakland Fire Department.  Duncan has a school-age son.  (Compl., ¶ 15.)

- Plaintiff Tracey Graham is a veteran of the United States Air Force.  Graham's partner has school-age children.  (Compl., ¶ 16.)

- Plaintiff Lisa Jang is currently enrolled as a full-time student at California State University, Sacramento.  She obtained her carry license for personal protection, in response to multiple reports of crime on and near the campus, including armed robbery, rape, and sexual assault.  (Compl., ¶ 17.)

- Plaintiff Dennis Serbu is a veteran of the Vietnam war and served ten years as a reserve police officer for the Cottonwood, Arizona police department.  Now retired, he has twelve grandchildren and is involved with their school activities.  (Compl., ¶ 18.)

- Plaintiff Michael Veredas served as a hospital corpsman in the United States Navy and served three combat deployments with the United States Marine Corps before his honorable discharge in 2005.  He has two children.  (Compl., ¶ 19.)

In order to obtain a carry license, Plaintiffs were required to demonstrate "good moral character," complete a firearms training course, and establish "good cause."  Cal. Penal Code §§ 26150, 26155.  In applying these standards, several counties have interpreted the "good cause" requirement to require that an applicant

---

furthering civil rights, with a particular focus on the right to keep and bear arms and laws affecting firearms.  (*See* Compl., ¶¶ 20–23.)  Each organization furthers its purposes by conducting public outreach, education, and legislative advocacy.  *Id.*  The organizations have spent funds educating the public about SB 707, and addressing their members concerns and complaints about Penal Code section 626.9(o).  (*See id.*)

1   demonstrate an elevated need for self-defense due to a specific threats or previous

2   attacks against them.  The Los Angeles County Sheriff's Department Concealed

3   Weapon Licensing Policy, for example, states:

4          [G]ood cause shall exist only if there is convincing evidence of a clear
       and present danger to life, or of great bodily harm to the applicant, his
5       spouse, or dependent child, which cannot be adequately dealt with by
       existing law enforcement resources, and which danger cannot be
6       reasonably avoided by alternative measures, and which danger would
       be significantly mitigated by the applicant's carrying of a concealed
7       firearm.

8   Los Angeles County Sheriff's Department, *Concealed Weapon Licensing*

9   *Policy* at 2 (emphasis in original).

10         Retired "peace officers," by contrast, are not subject to these same screening

11   requirements but rather appear to be eligible to carry firearms as a matter of course.

12   California Penal Code section 25455, for instance, provides that retired California

13   peace officers who *ever* carried a gun during their service "shall be issued an

14   identification certificate by the law enforcement agency from which the officer

15   retired" and "shall have an endorsement on the identification certificate stating that

16   the issuing agency approves the officer's carrying of a concealed firearm."  Cal.

17   Penal Code § 25455(a), (c); *id.*, § 25450(d).[3]

18         And the exemption under section 626.9(o) extends far beyond retired police

19   officers and deputy sheriffs.  It applies, for example, to:

20   - Retired employees of the Department of Fish and Game who enforced the Fish and Game Code (§ 830.2(e));
21   - Retired employees of the Department of Parks and Recreation who enforced the Public Resources Code (§ 830.2(f));
22
23   - Retired employees of the Department of Forestry and Fire Protection who enforced the Public Resources Code (§ 830.2(g)); and
24   - Retired marshals "appointed by the Board of Directors of the California Exposition and State Fair" whose primary duty was enforcing Section 3332 of the Food and Agricultural Code, which establishes the powers of the board of the State Fair (§ 830.2(i)).
25
26
27   [3]     The State responds that "the issuing agency may deny issuance of an identification certificate or endorsement, subject to review at a hearing," Opp. at 7 n. 7 (citing Cal. Penal Code § 26310), which only confirms that issuance of carry permits for retired peace officers is the default position.
28

These retirees need only re-apply every five years to their former agency to keep the special treatment, *id.* § 25465, and the former agency needs "good cause" to *not* renew it. *Id.* § 25470.

Similarly, and perhaps even more broadly, Section 626.9(o) exempts "any honorably retired *federal* officer or agent of any federal law enforcement agency" covered by Penal Code section 25650 (which exempts retired federal officers from the Penal Code's ban on carrying a concealed weapon), regardless of whether that retired federal officer or agent ever carried a gun in their federal "peace officer" duties. Cal. Penal Code § 25650(a) (emphasis added). It is sufficient if the "officer or agent" was simply "assigned to duty within the state for a period of not less than one year" or "retired from active service in the state." *Id.* Under this exemption, a covered federal officer simply provides their local sheriff or chief of police with their agency's "concurrence" that the retiree "should be afforded the privilege of carrying a concealed firearm." *Id.*, subd. (b). This exemption covers agents that include, but are not limited to, retired agents from the United States Customs Service or "any officer or agent of the Internal Revenue Service." *Id.*, § 25650(a).

The net result is that the Act bars law-abiding citizens who maintain a government-issued CCW from possessing a firearm "in or on" school grounds, but it grants a blanket exemption to a broadly defined group of retired "peace officers," none of whom have continuing authority to engage in "peace officer" activities: by definition, they are retired, they have returned to the ranks of private citizens, and they are no longer authorized to engage in law enforcement activities.

///

///

## III.

## LEGAL STANDARD

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. When determining whether a

claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## IV.

## ARGUMENT

### A. Plaintiffs Have Adequately Alleged A Control Group To State An Equal Protection Claim.

The State claims that Plaintiffs have failed to adequately identify a "control group" that is similarly situated to retired peace officers for the purpose of an Equal Protection claim.  (Mot. at 10:14–11:21.)  Not so.  As the Ninth Circuit has explained, "[t]he groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).  And "[t]he groups need not be similar in all respects, but they must be similar in those respects relevant to the [government's] policy."  *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014).  Plaintiffs have met this standard.

As set forth in the Complaint, Plaintiffs are private citizens who have been issued a conceal carry license through the licensing scheme set forth at California Penal Code section 26150, et seq.  (Compl., ¶¶ 33 ("Individual plaintiffs are responsible, law-abiding citizens who possess licenses to carry concealed weapons under California law"); 40 ("Plaintiffs are responsible, law-abiding citizens who possess licenses to carry handguns for self-defense under California law."); *see also id.*, ¶¶ 10–19 (identifying individual plaintiffs); 29 (discussing amendment to Penal

1   Code section 626.9).).

2       Private citizens licensed to carry through California Penal Code section

3   26150, et seq. are similarly situated to the group of retired "peace officer" private

4   citizens who possess concealed carry licenses through the various statutory

5   provisions referenced in Section 626.9(o).  (*See* Compl., ¶¶ 28; 34–35, 40.)

6   Plaintiffs are similar with respect to the government's policy underlying the Act; as

7   the Act's title makes clear, the Legislature's general objective is to promote public

8   safety on school grounds by eliminating the presence of firearms.  For the purpose of

9   the Act, Plaintiffs are similarly situated to retired peace officers: Both are groups of

10  private citizens licensed to carry concealed firearms for the lawful purpose of self-

11  defense.[4]

## B.   The Retired Peace Officer Exemption Violates The Equal Protection Clause.

14      "The Equal Protection Clause . . . den[ies] to States the power to legislate that

15  different treatment be accorded to persons placed by a statute into different classes

16  on the basis of criteria wholly unrelated to the objective of that statute.  A

17  classification 'must be reasonable, not arbitrary, and must rest upon some ground of

18  difference having a fair and substantial relation to the object of the legislation, so

19  that all persons similarly circumstanced shall be treated alike.'"  *Reed v. Reed*, 404

20  U.S. 71, 75–76 (1971) (quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415

---

[4]      The State's reliance on *Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) is misplaced, as that appeal did not arise from a motion to dismiss.  As the Northern District has recognized, "when the Ninth Circuit reviewed the claims [in *Freeman*] it was not addressing the requirements of pleading an equal protection case, but rather, the requirements of proving one."  *Williams v. Vidmar*, 367 F. Supp. 2d 1265, 1271 (N.D. Cal. 2005).  Part of the State's argument, moreover, stems from apparent confusion over the Complaint's statement that "[t]he purpose of this lawsuit is not to engineer a restoration of the exemption to the Act for 'mere' private citizens with a license to carry."  (*See* Mot. at 11:5–8, quoting Compl., ¶ 6.)  The point of this statement is to underscore that if Plaintiffs are successful, the case would not restore Plaintiffs' right to carry, but rather would strike down the preferential treatment granted to "retired peace officers" by eliminating the exemption.  In other words, neither Plaintiffs nor "retired peace officers" would be exempt from the Act's general prohibition of carrying firearms on school grounds.

(1920)).

Although deferential, the rational-basis standard "is not a toothless one," *Mathews v. Lucas*, 427 U.S. 495, 510 (1976), and "even the standard of rationality . . . must find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993).  When conducting rational-basis review, it is the court's "duty to scrutinize the connection, if any, between the goal of a legislative act and the way in which individuals are classified in order to achieve that goal."  *Silveira*, 312 F.3d at 1088.  And because "[t]he search for the link between classification and objective gives substance to the Equal Protection Clause," *Romer v. Evans*, 517 U.S. 620, 632 (1996), courts "insist on knowing the relation between the classification adopted and the object to be attained," *id.* at 633.  To that end, the question is focused "whether there is a rational basis for the *distinction*, rather than the underlying government *action*."  *Gerhart v. Lake County Montana*, 637 F.3d 1013, 1023 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 249 (2011) (emphasis in original).[5]

### 1.   Favoring Retired Peace Officer Civilians Over Similarly-Situated Civilians With Carry Licenses Bears No Rational Relation To The Purpose of the Gun-Free School Zone Act.

Here, there is no connection between the retired peace officer exemption and the purpose of the Gun Free School Zone Act.  The State argues that the exemption serves the state's interest in "the protection and safety of retired peace officers," presumably by allowing retirees to defend themselves in the case of confrontation in a school zone.  (Mot. at 15:7–11.)  But this rationale is at odds with the purpose Act, which is, as the name demonstrates, to make schools "free" from guns.  Indeed, the only other categorical exemptions to the Act's prohibition are for peace officers and

---

[5]   Although *Gerhart* considered a so-called "class of one" Equal Protection claim, the Court noted that "[t]his principle applies in all Equal Protection claims in which there must be a rational basis for differential treatment."  637 F.3d at 1023 n.9 (citing *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 590 (9th Cir.2008)).

security personnel who are performing their duties.  Cal. Penal Code § 626.9(l) (exempting on-duty peace officers, members of the military, and armored vehicle guards); *id.*, subd. (m) (exempting certain security guards authorized to carry a loaded firearm, while acting within the course and scope of their employment).  Yet retired peace officers are, by definition, no longer engaging in law enforcement purposes—just like their fellow private citizens.

In this regard, the Ninth Circuit's decision in *Silveira v. Lockyer* is not only instructive, it is controlling.  There, the Court struck down a provision exempting retired peace officers from the prohibitions of the California Assault Weapons Control Act on Equal Protection grounds, holding that "the retired officers exception arbitrarily and unreasonably affords a privilege to one group of individuals that is denied to others . . . ." 312 F.3d at 1091.

That same rationale applies to the Act here.  Indeed, once the broad exemption for non-retired peace officer holders of carry licenses was eliminated, the Act was indistinguishable in concept from the restrictions on assault weapons prior to *Silveira*: both statutes' goal was to restrict access to firearms except for active and retired peace officers.[6]  Yet, just as in *Silveira*, the retired peace officer exemption grants a blanket exemption to a broadly defined group of retired "peace officers," none of whom have continuing authority to engage in "peace officer" activities. They are retired, they have returned to the ranks of private citizens, and they are no

---

[6]     The State argues that the Act contains "several exceptions" and is therefore different from the supposedly "comprehensive ban at issue in *Silveira*," but it cites only two exceptions in addition to the categorical exemptions noted above.  (Mot. at 17:9-16 (citing the limited exemptions for individuals who receive "written permission" from school authorities, Cal. Penal Code § 626.9(b), and individuals who "reasonably believe[ ]" they are "in grave danger because of circumstances forming the basis of a current restraining order," *id.*, subd. (c)(3)).).  The State wrongly describes the California Assault Weapons Control Act ("AWCA") at issue in *Silveira* as a "comprehensive ban," however:  the Ninth Circuit explained in detail how the AWCA restricted manufacturing, sale, transfer, and importation of certain "assault weapons" while grandfathering in *all* such weapons that were lawfully purchased prior to the AWCA's enactment and then registered – hardly a "comprehensive ban."  *See Silveira*, 312 F.3d at 1057–59.  There, as here, the Act was concerned with reducing access to, and use of, firearms.

longer authorized to engage in law enforcement activities.  Accordingly, allowing retired peace officers to carry weapons in a school zone is at odds with the purpose of the Act.  The exemption is therefore unconstitutional because the classification is not rationally related to achieve the underlying legislative goal.

The California Attorney General reached a similar conclusion in 2010, when asked whether "a peace officer who purchases and registers an assault weapon in order to use the weapon for law enforcement purposes [would be] permitted to continue to possess [it] after retirement."  Att'y Gen. Op. No. 09-901, 93 Ops. Cal. Atty. Gen. 130 (2010).  Relying on *Silveira*, then-Attorney General Edmund G. Brown, Jr., explained why the answer was "No":

> *Silveira* teaches that it is the a [sic] peace officer's role *as a law enforcement agent* that provides a rational basis for distinguishing between a peace officer and a private citizen for purposes of possessing and using assault weapons.  A retired officer is not authorized to engage in law enforcement activities.

*Id.* at *8 (emphasis in original).

The State's sole argument is that granting retired peace officers an exemption is rationally related to protecting their safety, but that is not the right question. Under the authorities cited above, there must exist a connection between the distinction in the exemption (favoring retired peace officers over other, similarly-situated civilians) and the Act's goal of *reducing the existence of guns* on school grounds. Thus, in *Silveira*, for example, the Court stressed that "any exception to the AWCA unrelated to effective law enforcement is directly contrary to the act's basic purpose of eliminating the availability of high-powered, military-style weapons and thereby protecting the people of California from the scourge of gun violence."  312 F.3d at 1090.  Likewise, it stressed that "allowing residents of California to obtain assault weapons for purposes unrelated to law enforcement is wholly contrary to the legislature's stated reasons for enacting *restrictions* on assault weapons."  *Id.* (emphasis added).

While allowing retired peace officers to carry concealed weapons in school

zones may be a rational way for the government to promote their safety, this is insufficient to validate the favorable treatment given to retired peace officer civilians as a class in light of the broader purposes of the Act.  Were it otherwise, and the question were limited solely to whether it was rational to think the favored class would benefit from the preference, nearly any classification would survive rational basis review.  *See Gerhart*, 637 F.3d at 1023 & n.9.  But that is not the test.

Thus, for example, when considering the analogous and narrow argument that that "some peace officers receive more extensive training regarding the use of firearms than do members of the public," the *Silveira* court focused again on the broader reason for the law; it stressed that the theory justifying granting retired peace officers access to otherwise-restricted arms and while denying that access to other civilians "bears no reasonable relationship to the stated legislative purpose of banning the possession and use of assault weapons in California, except for certain law enforcement purposes."  312 F.3d at 1090.  The court's reasoning—"[t]he object of the statute is not to ensure that assault weapons are owned by those most skilled in their use; rather it is to eliminate the availability of the weapons generally," *id.*—applies here as well: the purpose the Act is not to promote the safety of retired peace officers, it is to rid guns from schools.[7]

While the State argues that *Silveira* "*did not* address any self-defense justification for the exemption," Mot. at 17 (emphasis in motion), the Ninth Circuit stressed that it "must identify *any* hypothetical rational basis for the exception."  312 F.3d at 1090 (emphasis in original); *id.* at 1091 ("we must determine whether *any* reasonable theory could support the legislative classification") (emphasis in original).  It goes without saying that possessing more powerful weapons enhances one's self-defense, yet that truism was not sufficient to justify the retired peace

---

[7]     To the extent the State's argument rests on an implicit assumption that retired peace officer civilians can be trusted more than non-retired peace officer civilians to safely handle firearms on school grounds in the exercise of self defense, that too is foreclosed by *Silveira*.

officer exemption in *Silveira*.

The State relies heavily on *Mehl v. Blanas*, an unpublished decision from the Eastern District, to argue that the self-defense needs of retired peace officers justifies the classification. *Mehl* is distinguishable, however. As relevant here, the plaintiffs in *Mehl* brought an equal protection challenge to the statutory schemes that allowed both active and retired peace officers to carry concealed weapons if they used firearms in the line of duty. (Defendant's RJN Ex. C at 11:12 (concluding that "there is a rational basis for allowing a retired officer to *continue to carry* a concealed weapon") (emphasis added).) Unlike in this case, the plaintiffs in *Mehl* did not have concealed-carry licenses; in fact, their applications were denied. Rather, they challenged—as a general matter—the statutory schemes that allowed both active and retired peace officers to obtain concealed carry licenses without the separate "good cause" showing that applies to private citizens.[8]

In that context, the court decided that there was a rational justification for "allowing a retired officer to *continue* to carry a concealed weapon" through a relaxed licensing requirement within a licensing system designed to permit *increased* access to, and usage of, firearms. (Defendant's RJN Ex. C at 11:12 (emphasis added).) Nor did *Mehl* consider the constitutionality of a classification that distinguishes between classes of civilians who are already licensed. Particularly in light of *Silveira*, it simply does not follow that *Mehl* justifies granting a retired peace-officer civilian a greater right to self-defense than another civilian with a concealed-carry license, in the context of a statutory scheme whose goal is *preventing* civilians from possessing guns on school grounds. While there may be a

---

[8]     The State's reliance on *Nichols v. Brown*, fails for the same reason: Similar to the plaintiffs in *Mehl*, Nichols argued that the statutory scheme permitting the open carry of firearms violated equal protection, in part because retired peace officers are exempt from the statute. 2013 WL 3368922, *6 (C.D. Cal. July 3, 2013). In the course of dismissing a series of alternate arguments by Nichols, the court observed that "the California Legislature could have reasonably believed that certain groups, such as retired police officers, were in greater need of self-protection and thus should be allowed to openly carry a firearm." *Id.*

1   rational basis for subjecting retired peace officers and private citizens to different

2   statutory licensing schemes, once licensed, there isn't a rational basis to treat the two

3   classes differently in the context of legislation aimed at making schools "gun-free."

4   The Ninth Circuit's *Silveira* decision controls here, not the unpublished Eastern

5   District decision in *Mehl*.

6        The State's argument is further undermined by the fact that, when the State

7   actually considered self-defense interests as a basis for an exemption from the Act, it

8   imposed a high bar:  The person asserting the need for self-defense must have a

9   "current restraining order issued by a court against another person or persons who

10  has or have been found to pose a threat to his or her life or safety."  Cal. Penal Code

11  § 626.9(c)(3).  And even then, the person is still subject to conviction if they did not

12  "reasonably believe[] that he or she is in grave danger."  *Id.* See *U. S. Dep't of Agric.*

13  *v. Moreno*, 413 U.S. 528, 536 (1973) (existence of separate provisions dealing with

14  the asserted government interest "casts considerable doubt upon the proposition that

15  the . . . amendment [being challenged] could rationally have been intended" to

16  address the same concerns).  By stark contrast, retired peace officers need make no

17  showing at all about any particularized need for self-defense.  Moreover, as shown

18  above, Los Angeles County residents like plaintiff Garcia can only establish "good

19  cause" to obtain a concealed carry permit "if there is convincing evidence of a clear

20  and present danger to life, or of great bodily harm to the applicant, his spouse, or

21  dependent child, which cannot be adequately dealt with by existing law enforcement

22  resources. . . ."  Los Angeles County Sheriff's Department, *Concealed Weapon*

23  *Licensing Policy* at 2 (emphasis in original).

24        Likewise, the exemption's wide sweep demonstrates not only the absence of a

25  connection between the classification and the statutory objective, it also

26  demonstrates the irrationality of the classification itself.  While the State correctly

27  notes that "perfection" may not be required, the Legislature does not have free reign

28  to divide citizens into classes however it sees fit—as explained above, the Equal

Protection Clause requires a link between the classification and the statutory objective. *Heller*, 509 U.S. at 321; *Romer*, 517 U.S. at 633; *Silveira*, 312 F.3d at 1088; *see also Walgreen Co. v. City & Cnty. of San Francisco*, 185 Cal.App.4th 424, 428 (2010) (holding that exempting grocery and "big box" stores from ordinance prohibiting the sale of tobacco violated equal protection because the distinction was "not fairly related to the object of the prohibition on sales of tobacco products.").[9]

Here, the exemption covers, for example, retired employees of the California Department of Fish and Game who enforced the California Fish and Game Code, and retired marshals appointed "to keep order and preserve peace at the California Exposition and State Fair." Cal. Penal Code §§ 830.2, 25450; Cal. Food & Agric. Code § 3332(j). The exemption is so broad that it even applies to retirees from "any federal law enforcement agency" now authorized to carry a concealed weapon, regardless of whether they ever used a weapon in their pre-retirement duties. Thus, for instance, retired Internal Revenue Service agents and other federal agents are exempt simply by virtue of retiring in California or working for the agency in California for more than a year. Cal. Penal Code § 25650(a). While the self-defense rationale is an insufficient justification for the reasons noted above, the notion of a need to protect against "enemies" made in the line of duty is silly to the point of irrationality as applied to a Fish and Game agent, a State Fair marshal, or an IRS agent who spent most of their career outside of California but happened to retire here. Nor, in any event, does this broad exemption help achieve the purposes of restricting access to firearms on school grounds.

---

[9]   *Vance v. Bradley*, 440 U.S. 93 (1979), on which the State relies, involved a claim that requiring federal employees covered by the Foreign Service retirement system to retire at the age of 60 violated the Equal Protection Clause because federal employees covered by the Civil Service retirement system did not have a similar retirement age. To state the issue there is sufficient to demonstrate the differences between the two cases, but it is worth noting further that the Court stressed the "imperfection" there arose out of the very different fact that "[t]he Foreign Service retirement system and the Civil Service retirement system are packages of benefits, requirements, and restrictions serving many different purposes," *id.* at 109, a quality that does not exist here.

Finally, the State cannot change course and argue, as the California College and University Police Chiefs Association argued in opposition to SB 707 as originally proposed, that eliminating the retired peace officer exemption "would undermine public safety" because retired peace officers "can play a role in helping to keep [active shooter] incidents [on campus] in check." (Mot. at 5:8–16.)  This rationale, too, is foreclosed by *Silveira*; just as in that case, it is squarely at odds with the broader purpose of the statute, and likewise ignores the fundamental fact that— in the words of then-Attorney General Brown—retired peace officers are no "longer law enforcement agent[s]," and therefore "not authorized to engage in law enforcement activities."  93 Ops. Cal. Atty. Gen. 130, at *8.

The retired peace officer exemption violates the Equal Protection clause.

**2.    The Retired Peace Officer Classification Further Violates The Equal Protection Clause Because It Is Simply A Benefit Conferred On A Politically Powerful Class That Is Denied To A Politically Unpopular Class.**

The State's evidence supports yet another reason that the retired peace officer exemption violates the Equal Protection Clause: It demonstrates that the Legislature included the exemption for the improper purpose of favoring a politically powerful group and to disfavor a politically unpopular one.  Specifically, the State requests judicial notice of letters contained in two legislative committee reports which it claims support the idea that the distinction is warranted by the State's interest in protecting the safety of retired officers.  While these reports shed no light on legislative intent, [10] they reflect precisely what Plaintiffs described in the complaint:

---

[10]    The statements on which the State relies, made in letters of opposition, are not a valid source of legislative history.  "[A] court will generally consider only those materials indicative of the intent of the Legislature as a whole."  *Metro. Water Dist. of S. Cal. v. Imperial Irrigation Dist.*, 80 Cal. App. 4th 1403, 1425 (2000).  Material that does not reflect the "Legislature's collective intent," including "letters . . . expressing opinions in support of or opposition to a bill . . . generally should not be considered."  *Id.* at 1426.  *See also McDowell v. Watson*, 59 Cal.App.4th 1155, 1161 (1997) ("[L]etters written to those legislators in the attempt to influence [their] views must also be disregarded.").  As a result, the Court should decline to take judicial notice of the reports—or at the very least acknowledge that they shed no light on legislative intent.  *See Quintano v. Mercury Casualty Co.*, 11 Cal.4th 1049, 1062 n.5

Potent lobbying efforts by the retired peace officers' lobby directed at obtaining preferential treatment for their constituents.  These arguments, which the State repeats in detail in its moving papers, lay bare the disparate treatment that Plaintiffs now face.  (Mot. at 5:8–6:21.  *See* RJN Ex. 1 at 6 (noting opposition from the California College and University Police Chiefs Association) and 8 (opposition from the Sacramento County Deputy Sheriffs' Association); RJN Ex. 2 at 5–7 (noting competing arguments in support and opposition).)  For example, the State quotes opposition from the Sacramento County Sheriff's Association, which argued:

> Forcing our retired members to choose between picking up their children or grandchildren form [sic] school or attending school events and ensuring their own ability to protect themselves or their loved ones Is a decision they should not be required to make. Neither should retired officers be forced to jeopardize their safety in order to take college classes.

(Mot. at 6:2–7, quoting Sacramento County Sheriff's Association's Opposition to SB 707.)

Maybe so.  But why should Dr. Ulises Garcia, who received a license to carry in response to a threat of violence from a former patient, be forced to choose between protecting his family and attending school events?  Should Scott Dipman also be forced to forgo his right to self-defense while hand-delivering his sons to class?  What about when Jordan Gallinger, an expert marksman in the United States Marine Corps, wants to go to school?  Or when Lisa Jang walks across campus late at night—must she jeopardize her safety?  The fact is, through SB 707, the Legislature has singled out a class of persons for special treatment, then denied it to others who are similarly situated.

The United States Supreme Court has long held that drawing classifications based on political unpopularity violates the Equal Protection Clause.  "[I]f the

---

(1995) (denying request for judicial notice); *Heavenly Valley Ski Resort v. El Dorado Cnty. Bd. of Equalization*, 84 Cal.App.4th 1323, 1341 (2000) (denying request for judicial notice).

constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."  *Moreno*, 413 U.S. at 534 (striking down statutory classification designed to discriminate against "hippies" and those who lived in "hippie communes"); *accord City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 447, 450 (1985) (striking down a permitting law that "appear[ed] . . . to rest on an irrational prejudice against the mentally retarded"); *Rinaldi v. Yeager*, 384 U.S. 305 (1966) (striking down state statute that only demanded reimbursement of appellate transcript costs from unsuccessful appellants who were imprisoned); *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) ("some objectives, such as 'a bare . . . desire to harm a politically unpopular group,' are not legitimate state interests.").

No one can deny that civilian gun owners are unpopular with the California Legislature—that is, unless those civilians are former "peace officers."  The Legislature re-inserted the exemption here to avert opposition by favoring a politically powerful group—at the expense of a politically unpopular group.

**C.    The Organizational Plaintiffs Have Standing.**

The State also argues that the organizational Plaintiffs lack standing because, in its view, the equal protection claims are not "germane to the alleged purposes" of the organizations.  (Mot. at 18:12–20:18.)  Each of the organizational plaintiffs is dedicated to furthering civil rights, with a particular focus on the right to keep and bear arms and laws affecting firearms.  (*See* Compl., ¶¶ 20–23.)  Each organization furthers its purposes by conducting public outreach, education, and legislative advocacy.  *Id.*  This litigation is germane to the organizations' purposes, as it challenges the discriminatory treatment suffered by some citizens (including members of the plaintiffs' organizations) who seek to exercise their right to keep and bear arms for self-defense.  This is sufficient to establish standing for each of the organizational Plaintiffs.  *See, e.g.*, *Silvester v. Harris*, 41 F. Supp. 3d 927, 942 (E.D.

Cal. 2014).

## V.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be denied.

Dated:  July 18, 2016                    BENBROOK LAW GROUP, PC


                                         By   /s Bradley A. Benbrook
                                            BRADLEY A. BENBROOK
                                            Attorneys for Plaintiffs